# IN THE OREGON TAX COURT

H. William BLADORN
and, by Power of Attorney, for his spouse,
Marjorie G. Bladorn
*v.*
## DEPARTMENT OF REVENUE
(TC 2765)

H. William Bladorn appeared *pro se*.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 8, 1988.

**CARL N. BYERS, Judge.**

Plaintiff, by amended returns for 1981 and 1982, claimed additional personal exemption credit as a "severely disabled person" and sought refunds. Defendant denied the refunds on the ground that plaintiff's vision problem, requiring contact lenses and glasses, did not make him "severely disabled."

During the years in question, ORS 316.136 provided an additional personal exemption for taxpayers who were severely disabled as of the end of the year. ORS 316.135 (renumbered ORS 316.758 in 1983) defined severely disabled as follows:

"(1)   A person is 'severely disabled' if the person:

"(a)   Has lost the use of one or more lower extremities;

"(b)   Has lost the use of both hands; or

"(c)   Suffers an affliction that limits the abilities of the person to earn a living, maintain a household or transport himself without employing special orthopedic or medical equipment or outside help.

"(2)   'Orthopedic or medical equipment' includes, but is not limited to, wheelchairs, braces, prostheses or special crutches."

Plaintiff claims that he is severely disabled under subsection (1)(c) because he has diabetic retinopathy which requires him to wear contact lenses. As of December 28, 1985, according to his optometrist, plaintiff's

"[U]ncorrected visual acuity is less than 20/400 in each eye. Corrected vision responds well with contact lenses to 20/20 in each eye.

"Oxygen permeable contact lenses are required to insure good external eye health. Reading glasses are required to be worn over his contacts. Sunglasses are required to filter ultra-violet light for driving and outdoor activities."

Plaintiff asserts he would be unable to earn a living, maintain a household or transport himself without using a contact lens/reading glass system. He testified that the contact lenses are a special, gas permeable lens and are only effective for distances of approximately 20 to 100 feet. In order to read he must combine the contact lenses with reading glasses. He drives his automobile but maintains that he is able to do so only because of his familiarity with the town in which he has lived for many years.

Defendant contends that plaintiff's contact lens/reading glass system does not qualify as "special orthopedic or medical equipment" pursuant to ORS 316.135(1)(c). In defendant's view, contact lenses and glasses are not similar to the enumerated items in subsection (2) listing "wheelchairs, braces, prostheses or special crutches." and, therefore, are not "special" medical equipment. Defendant argues that the specified equipment:

"[I]s not used by the average individual, and leaves the individual with a discernible handicap. However, contact lenses are used by large numbers of individuals * * *."

The statute leaves much to be desired when fitted against specific facts. The obvious question is: Why wasn't the severe disability of blindness mentioned? Is it because the legislature had already provided an additional exemption for taxpayers who are blind? It is highly unlikely that the legislature intended to provide two additional exemptions for blindness. In the absence of any discussion of blindness in the legislative history, the court concludes that the legislature did not intend to include blindness in the definition of "severely disabled."

Even if the legislature did so intend, it could not have intended to permit a taxpayer to qualify as "severely disabled" who did not qualify as blind. Plaintiff admits that he does not qualify as blind, but nevertheless claims to be severely handicapped.[1]

The history of the legislation is of some help in finding its intent. In a report to the House Committee on Revenue, the United Cerebral Palsy Association of Northwest Oregon, which introduced HB 3080 (codified as ORS 316.135), wrote of the extra expenses of the handicapped:

> "With the physically handicapped, it's wheelchairs, prosthesises [sic] and other special appliances to help them carry on their daily routine; * * *."

The report urged passage of HB 3080, stating that "giving physically handicapped a double exemption" was "something that should have been done 20 or more years ago when the legislature granted double exemptions to the blind and those taxpayers over 65." Thus, advocates of the measure distinguished the physically handicapped from those of the blind or the aged.

The revenue impact of the proposed HB 3080, as estimated by the legislative revenue office in 1979, stated that "approximately 1,095 taxpayers" would be eligible for the double exemption. The estimate could not have included all taxpayers requiring contact lenses or glasses because that estimate would have been significantly higher.

---

[1] Note the case of *Emanuel Hollman v. Commissioner,* 38 TC 251, 262 (1962), in which the U. S. Tax Court held that the taxpayer was entitled to the blind exemption where the evidence established that, although his vision could be corrected, it was only by virtue of "special type of contact lens" which "could be worn by petitioner only with severe pain and only for brief periods, and that they produced infection and ulcers."

The legislature stated: " 'Orthopedic or medical equipment' includes but is not limited to, wheelchairs, braces, prostheses or special crutches." It is noteworthy that only "special" crutches would qualify, not ordinary crutches. The equipment listed above denotes severe, discernible handicaps. The words used and the legislative history indicate a concern for people with handicaps as to their physical movements, not as to their sensory perceptions. Further, many people whose vision is corrected by contact lenses would deny they are "handicapped," much less "severely handicapped."

The court finds that "medical equipment," as used in ORS 316.135, does not include contact lenses, glasses or combination thereof. Plaintiff's visual acuity is 20/20 with the aid of contact lenses and glasses. The court finds that plaintiff is not "severely disabled"; therefore, defendant's Opinion and Order No. 87-0318 is affirmed.

Costs to neither party.